POCAHONTAS COUNTY, IOWA; DRAINAGE DISTRICT No. 102 et al., appellants, v. J. F. CARLSON and NATIONAL SURETY CORPORATION OF NEW YORK, appellees.

No. 48066.

(Reported in 54 N.W.2d 512)

JULY 28, 1952.

REHEARING DENIED SEPTEMBER 19, 1952.

Donald G. Beneke, County Attorney, F. E. Van Alstine and James W. Hudson, both of Pocahontas, for appellants.

Shaw & Shaw, of Pocahontas, for appellees.

WENNERSTRUM, J.—Plaintiffs in an equity action sought to recover from defendant J. F. Carlson, former county treasurer of Pocahontas County, Iowa, and the surety on his official bond the sum of $827.88. The plaintiffs in their petition claim that at the time Carlson turned over to his successor the funds then on hand there was a deficit in his accounts in the amount previously mentioned. It is claimed that certain sums of money had been erroneously paid or credited by Carlson as treasurer in connection with warrants issued by reason of drainage construction work and that an overdraft thereby resulted in the year 1935. It is contended by the defendants that this overdraft was disclosed in the treasurer's semiannual reports. Carlson's tenure of office was terminated by his resignation on July 31, 1946. The present action was commenced on July 10, 1948. The trial court held that the right of action against the defendants accrued more than three years prior to the commencement of the present suit and that any action based on the facts disclosed by the evidence was barred by the statute of limitations as pleaded by the defendants. It entered judgment in their favor. The defendants also pleaded laches as a defense but the trial court made no ruling in connection with this issue. The plaintiffs have appealed.

The matters out of which this litigation has developed involve Drainage District No. 102 in Pocahontas County, Iowa. The drainage ditch was constructed sometime in 1920 or 1921. The cost of the construction work was assessed against the properties and was paid for by the issuance of warrants and bonds and also by assessment certificates issued to cover certain assessments subsequently established on appeal in 1934. The board of supervisors directed the issuance of new warrants to take

up certain of these old construction warrants, and it appears that one of these new warrants so issued was improperly paid by the defendant-treasurer, thus creating the overdraft on which the demand against him has been made.

Much of the evidence presented before the trial court was by means of stipulations. Inasmuch as they set forth the situation upon which this action has been brought, we hereinafter set out the material portion of them as made at the time of the trial:

"STIPULATION: Mr. A. J. Shaw: It is stipulated that the shortage of $827.88 for which the plaintiff is asking judgment arose entirely out of an alleged erroneous act of the defendant in cashing or accepting as credits warrants issued by the Auditor's Office and recognized and cashed or credited by the defendant in the years 1934 and 1935, and that none of the shortage occurred by any acts of the Treasurer thereafter; *and that the Board of Supervisors of Pocahontas County was fully conversant with the cashing or crediting of the said warrants as early as the year 1938.* [Italics supplied.]

"Mr. Van Alstine: It is further stipulated that at the termination of the tenure of office as County Treasurer by John F. Carlson, that his records and accounts showed that an item of $827.88 was charged against Drainage District No. 102, Pocahontas County, Iowa, and that said charge was carried on the Treasurer's books as a credit to said Treasurer against funds with which he was lawfully charged at the time of his termination of his tenure of office.

"Mr. A. J. Shaw: *And that that amount or practically that amount had been carried on the Treasurer's books as an overdraft all of the time since the year 1935.* [Italics supplied.]

"Mr. Van Alstine: I want to add one thing to clarify this record. And except for the credit to defendant Carlson of the overdraft in Drainage District No. 102 as above set out, Mr. Carlson's cash accounts would have been short and deficient in the amount of the overdraft stated. Is that good?

"Mr. A. J. Shaw: Yes. * * *

"Mr. Van Alstine: It is further stipulated that the transactions in 1934 and 1935 giving rise to the shortage in the drainage accounts of Drainage District No. 102 was as follows:

Certain warrants issued in payment of the construction of the drainage district in 1920 and 1921 were presented and the Board of Supervisors in 1934 authorized reissuance of warrants to take up the old construction warrants presented. One of the construction warrants in the sum of $500 was presented by one J. D. Poduska, a landowner in Drainage District No. 102; that certificates of assessment had been issued against the lands of Mr. Poduska and were in the hands of third parties for value; that Mr. Poduska presented a construction warrant issued in 1920 or 1921 for payment by said district, and that upon authorization of the Board, as above stated, a new warrant was issued to Mr. Poduska, including simple and compound interest, upon the $500 warrant, the new warrant being issued in the sum of $1041.21; and that shortly thereafter Mr. Poduska presented the reissued warrant in the sum of $1041.21 in payment of outstanding taxes against his lands in Drainage District No. 102 against which assessment certificates had been issued as above stated, and received credit therefor from the defendant Carlson in the sum of $397.67. This occurred in the fall of 1934. In accepting said warrant in payment of drainage taxes said defendant Treasurer credited the same in payment of outstanding drainage taxes against the land of Poduska in the amount stated and issued to Poduska a certificate of overplus, which certificate was presented by Poduska to the County Auditor and received in exchange therefor an overplus warrant in the sum of $643.54; and on April 26, 1935, Poduska presented the overplus warrant for payment to defendant J. F. Carlson and received full cash value therefor. Is that correct?

"Mr. A. J. Shaw: Yes.

"Mr. Van Alstine: The plaintiffs rest.

"Mr. A. J. Shaw: The defendant rests."

There was other evidence in the form of an auditor's report which we do not deem necessary to here discuss. The several reports of the county treasurer were also introduced in evidence. The plaintiffs in their brief and argument filed in this court state:

"It is admitted that in 1938 the board was fully conversant with the fact that the warrant causing the 'overdraft' was cashed

in 1935, but it is not shown that the board had knowledge of the resultant shortage until an audit in 1947."

It is thus shown by the stipulations entered into by the parties and the statement made in plaintiffs' brief that the plaintiffs had knowledge of the fact that the warrant causing the "Overdraft" was cashed in 1935. It appears, however, that the board of supervisors maintains that it did not have knowledge of the claimed shortage until an audit was made in 1947. It now apparently seeks to distinguish between the overdraft as shown by the reports and the claimed shortage at the time of the treasurer's resignation.

I. Section 614.1(4), 1946 Code provides that an action against a sheriff or other public officer growing out of a liability incurred by the doing of an act in an official capacity or by the omission of an official duty must be brought within three years.

Regardless of the fact that the plaintiffs maintain that the claimed shortage did not in fact result until his final accounting, it seems very clear to us that the claimed misappropriation or the doing of an irregular or improper official act occurred in 1934 or 1935 and was known by the board of supervisors as early as 1938. The stipulations amply disclose that all the matters here involved were known by the county board a number of years before the treasurer resigned from his office. Under these circumstances the trial court properly held for the defendants.

In the case of Polk County v. Roe, 164 Iowa 302, 303, 145 N.W. 868, it is shown that the county claimed that the cause of action against the defendants did not accrue until the time when the board of supervisors had determined what fees were due. This court held in the cited case that there was a report due from the defendant on the first of January of each year and that the statute started to run from the date when the first report was due. See also Baie v. Rook, 223 Iowa 845, 846, 273 N.W. 902, 110 A. L. R. 1062, where facts show a county recorder failed to index a chattel mortgage and a subsequent mortgage obtained priority. This court held that the action accrued when the act was done and not when resulting damage occurred. The plea of the statute of limitations was sustained.

The case of Harrison County v. Ogden, 165 Iowa 325, 344, 145 N.W. 681, which the appellants claim is controlling in this case, is not applicable to the facts here under review. In this last referred to case it is shown that in each of the settlement reports made by the county treasurer prior to his final report the official accounted for all funds charged to him and it was not until the final settlement that he refused to account for the sum involved in the payment of an improperly issued and paid warrant. The situation is different from the instant case where the overdraft was shown in the periodic reports of the treasurer.

Likewise we do not believe the case of Boone County v. Jones, 54 Iowa 699, 2 N.W. 987, 7 N.W. 155, 37 Am. Rep. 229, cited by plaintiffs, is controlling. In the instant case the overdraft was known. There were no false statements of account in the present situation as there apparently were in the cited case.

II. In one of the divisions of plaintiffs' reply filed in the district court it is stated that "* * * on several occasions, said defendant Carlson personally appeared before said Board while the Board was in official session and assured said Board that the transactions disclosed by the Auditor's report had not occurred, and further stated to said Board that if any shortage was created in said funds by his or his deputy's acts, that he would reimburse said fund. That the said Board relied upon the words, acts, and assurances of said defendant, and that he is thereby barred and estopped to interpose any statute of limitations or laches in defense of this action." In their brief and argument in this court plaintiffs assert as a ground for reversal that the trial court failed to consider this issue. We have searched the record for any evidence to support the plaintiffs' pleaded claim and their present contention.

In the case of King v. Knudson, 209 Iowa 1214, 1217, 229 N.W. 839, 841, this court held:

"Estoppel is not made out, in the absence of evidence that the act or conduct relied upon to constitute the same was acted upon by the other party so that he was misled or prejudiced. [Citing cases] * * * The plaintiff was not called as a witness, and no reason is shown for the failure to use her as a witness. The record fails to disclose any act of commission or omission by

the appellee upon which the appellant relied to her detriment. Therefore, her plea of estoppel must fail."

In the case of Mitchell County v. Odden, 219 Iowa 793, 259 N.W. 774, which the plaintiffs cite as an authority in connection with their claim herein discussed, the action was on a claimed breach of the treasurer's bond. The plea of the statute of limitations was not involved and consequently the cited case is not controlling or applicable. In view of the record made there is no merit to this claimed ground for reversal.

 III. The plaintiffs in their brief and argument presented in this court herein contend that the claimed debt due the county was revived by the manner in which the overdraft was set out. In other words, the plaintiffs claim the shortage was evasively covered up and by reason of this fact the debt was revived by the showing made in the periodic reports filed. It is also now contended that there was a concealment of material facts in the reports filed and that thereby there was a breach of a legal duty and trust with a consequent injury which amounted to fraud. These claims and contentions were not made in the pleadings filed in the trial court and as a result were not considered by it. We cannot give consideration on appeal to a theory or issue not initially raised. Barker v. Davis, 36 Iowa 692; In re Disbarment of Meldrum, 243 Iowa 777, 780, 51 N.W.2d 881, 882.

Inasmuch as it was disclosed by the stipulation that the county board was fully informed concerning the cashing and crediting of the warrants as early as 1938, we cannot reach any other conclusion than that the plaintiffs' action is barred by the statute of limitations.—Affirmed.

All JUSTICES concur.